UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW JORDAN, <br><br> Plaintiff, <br><br> v. <br><br> MATCO TOOLS CORPORATION, <br><br> Defendant. | CIVIL COMPLAINT <br><br> CASE NO. 1:21-cv-00490 <br><br> DEMAND FOR JURY TRIAL |

## COMPLAINT

NOW COMES Plaintiff MATTHEW JORDAN ("Plaintiff"), by and through his attorneys, Consumer Law Partners, complaining as to the conduct of MATCO TOOLS CORPORATION ("Defendant"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §227 *et seq.*, the Indiana Deceptive Consumer Sales Act ("IDCSA") under I.C. 24-5-0.5 *et seq.*, as well as for Invasion of Privacy ("IOP"), and Trespass to Chattels ("TTC"), for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the TCPA. Subject matter jurisdiction is conferred upon this Court by 47 U.S.C §227, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Southern District of Indiana and a substantial portion of the events or omissions giving rise to the claims occurred in the Southern District of Indiana.

## PARTIES

4. Plaintiff is a consumer over 18 years-of-age residing in Marion County, Indiana, which lies within the Southern District of Indiana.

5. Defendant "is a manufacturer and distributor of quality professional automotive repair tools, diagnostic equipment, and toolboxes."[1] Defendant is engaged in the business of offering credit services and collecting or attempting to collect, directly or indirectly, debts owed or due using the mail and telephone from consumers across the country, including consumers located in the state of Indiana. Defendant's headquarters are located in Stow, Ohio, and its registered agent – CT Corporation System, is located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

6. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. Plaintiff previously obtained financing through Defendant in order to purchase various hand tools.

8. In August 2020, Plaintiff was involved in a serious automobile accident, which has rendered him unable to work.

---

[1] https://www.matcotools.com/about/

9. As a result, Plaintiff began falling behind on his monthly payments owed to Defendant, thus incurring debt ("subject debt").

10. Shortly thereafter, Plaintiff began receiving calls to his cellular phone, (317) XXX-4326, from Defendant.

11. At all times relevant to the instant action, Plaintiff was the sole subscriber, owner, and operator of the cellular phone ending in -4326. Plaintiff is and always has been financially responsible for the cellular phone and its services.

12. Defendant has used a variety of phone numbers and area codes when placing calls to Plaintiff's cellular phone, including but not limited to: (330) 319-9992 and (800) 472-0012.

13. Upon information and belief, the aforementioned phone numbers are regularly utilized by Defendant during its debt collection activities.

14. During answered calls, Plaintiff experiences a noticeable pause, lasting a handful of seconds in length, and has to repeatedly say "hello" before a live representative begins to speak.

15. When Plaintiff is unable to answer Defendant's phone calls, Defendant will leave a pre-recorded message requesting that Plaintiff return its calls.

16. Upon speaking with Defendant, Plaintiff was informed that Defendant was seeking to collect upon the subject debt.

17. Plaintiff explained the physical and financial hardships he has been facing, but Defendant persisted with its systematic phone calls, which prompted Plaintiff to demand that it stop calling him.

18. Plaintiff has even reiterated this information during subsequent conversations with Defendant.

19. Despite Plaintiff's efforts, Defendant has willfully ignored Plaintiff's demands and has proceeded to place calls to Plaintiff's cellular phone through the filing of this action.

20. Defendant has contacted Plaintiff *at least* 20 times after Plaintiff has demanded that it stop calling.

21. Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages therefore include reasonable attorneys' fees incurred in prosecuting this action.

22. Due to Defendant's conduct, Plaintiff is entitled to statutory damages, punitive damages and all other appropriate measures to punish and deter Defendant and other collectors from engaging in the harassing and unlawful collection practices described in this Complaint, *supra*.

23. Plaintiff has been unfairly and unnecessarily harassed by Defendant's actions, and has suffered severe emotional distress from Defendant's incessant conduct.

24. Plaintiff has suffered additional concrete harm as a result of Defendant's actions, including but not limited to: invasion of privacy, aggravation that accompanies collection telephone calls, emotional distress, increased usage of his telephone services, loss of cellular phone capacity, diminished cellular phone functionality, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

### COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

25. Plaintiff repeats and realleges paragraphs 1 through 24 as though fully set forth herein.

26. The TCPA, pursuant to 47 U.S.C. § 227(b)(1)(iii), prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS") *or* pre-recorded messages without their consent. The TCPA, under 47 U.S.C. § 227(a)(1), defines an ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers."

27. Defendant called Plaintiff's cellular phone using pre-recorded messages, as evidenced by the voice messages left on Plaintiff's cellular phone.

28. Defendant also used an ATDS in connection with its communications directed towards Plaintiff's cellular phone. The significant pause, lasting several seconds in length, that Plaintiff experiences during answered calls from Defendant, as well as the fact that Plaintiff has to repeatedly say "hello" before he is connected with a live representative is instructive that an ATDS was being utilized to generate the phone calls.[2]

29. Moreover, the nature and frequency of Defendant's contacts points to the involvement of an ATDS. Specifically, the near-daily calls suggests that Defendant's phone system has the capacity to randomly or sequentially generate Plaintiff's cellular phone number and dial such number automatically, rather than through some process where Defendant is actively choosing to call Plaintiff's number and subsequently initiating the calling process after determining that Plaintiff was the intended target of its phone calls.

30. Upon information and belief, the system employed by Defendant to place the phone calls to Plaintiff's cellular phone has the means to identify the owner of the number that is produced shortly after the number is produced.

31. In light of the foregoing, and upon information and belief, the system employed by Defendant to place phone calls to Plaintiff's cellular phone has the *capacity* – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.

---

[2] Upon information and belief, the ATDS employed by Defendant transfers the call to a live representative once a human voice is detected, hence the conspicuous delay before being connected to a live representative. Furthermore, the ATDS employed by Defendant to contact Plaintiff's cellular phone detects when it has reached an individual's voicemail, and subsequently transfers such call to a live representative in the event Defendant's then-set calling campaign calls for leaving messages.

32. Defendant violated the TCPA by placing at least 20 phone calls to Plaintiff's cellular phone using pre-recorded messages and an ATDS without his consent. Any consent Plaintiff may have given to Defendant by virtue of incurring the subject debt was explicitly revoked by Plaintiff's demands that it cease contacting him.

33. The calls placed by Defendant to Plaintiff were regarding business transactions and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

34. Under the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B), Defendant is liable to Plaintiff for at least $500.00 per call.  Moreover, Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. § 227(b)(3)(C).  Plaintiff notified Defendant's representatives to stop contacting him a handful of times, but in spite of this information, Defendant intentionally proceeded to place mass phone calls to Plaintiff's cellular phone without his permission.

WHEREFORE, Plaintiff, MATTHEW JORDAN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages of at least $500.00 per phone call and treble damages pursuant to 47 U.S.C. §§ 227(b)(3)(B)&(C);

c. Awarding Plaintiff costs and reasonable attorney fees;

d. Enjoining Defendant from further contacting Plaintiff; and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT

35. Plaintiff repeats and realleges paragraphs 1 through 34 as though fully set forth herein.

36. Defendant violated I.C. 24-5-0.5-3(a) and (b)(19) by engaging in unfair, abusive and deceptive practices through its systematic collection efforts towards Plaintiff.

37. The IDCSA states:

> "A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations." I.C. 24-5-0.5-3(a).

> "Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier are deceptive acts: The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19).

38. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

39. Defendant is a "supplier" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(3).

40. Defendant's collection calls to Plaintiff were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

41. Defendant engaged in unfair, abusive, and deceptive behavior in its interactions with Plaintiff. Through systematic and frequent collection attempts, Defendant has used pre-recorded messages and an automated system to relentlessly contact Plaintiff. Defendant was specifically notified by Plaintiff to stop contacting him, but it refused to do so. Any consent Plaintiff may have given to Defendant was explicitly revoked by his demands that Defendant cease contacting him, however, Defendant purposefully ignored Plaintiff's prompts in an abusive attempt to extract payment from him.

42. Through its conduct, Defendant falsely represented that it had the lawful ability to contact Plaintiff using pre-recorded message and an automated system. Once Plaintiff demanded that it

7

stop calling him, Defendant was obligated under the TCPA to cease its contacts. In defiance of the law, however, Defendant continued its deceptive conduct and has continuously contacted Plaintiff. Upon information and belief, Defendant engages in this conduct on a systematic and frequent basis, knowing that consumers are unlikely to be aware of their rights and susceptible to sustained pressure.

43. In violating the TCPA, Defendant also violated one of the specifically enumerated prongs of the IDCSA, I.C. 24-5-0.5-3(b)(19). "In other words, an IDCSA claim may be based on one or more of the acts or representations on the list. A claim may be based only on an enumerated act, and not a representations at all." *Anderson v. O'Leary Paint Co.*, 2011 U.S. Dist. LEXIS 110837 at 17.

44. In violating the TCPA, Defendant engaged in illegal behavior during its collection efforts towards Plaintiff. Defendant intended that Plaintiff rely on its illegal behavior. The IDCSA was designed to protect consumers, such as Plaintiff, from the exact behavior committed by Defendant.

45. The IDCSA further states:

> "A person relying upon an uncured or incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater. The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. 24-5-0.5-4(a)(1)(2).

46. Although unsuccessful, Plaintiff made multiple attempts to correct Defendant's deceptive acts by demanding that it cease contacting him. However, Defendant's conduct is an *incurable* deceptive act of which notice would not remedy. The fact that Defendant was provided with numerous notices to stop calling, but yet it refused to abide by said notices, evidenced by calling

Plaintiff at least 20 times after he told it to stop, shows that its behavior is incurable and that it has no intention of curbing its behavior.

47. Defendant conducts the above described behavior on a wide and frequent basis. This goes against the state's goal of preventing the phone from frequently ringing with unwanted calls. Every call uses some of the phone owner's time and mental energy, both of which are precious.

48. In addition to inhibiting Plaintiff's time and energy, as pled in paragraphs 21 through 24, *supra*, Plaintiff has suffered damages as a result of Defendant's unlawful collection practices. Plaintiff is entitled to relief pursuant to I.C. 24-5-0.5-4(a)(1)(2).

WHEREFORE, Plaintiff, MATTHEW JORDAN, respectfully requests that this Arbitrator enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

c. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

d. Enjoining Defendant to cease contacting Plaintiff; and

e. Awarding any other relief as this Arbitrator deems just and appropriate.

### COUNT III-INVASION OF PRIVACY-INTRUSION UPON SECLUSION

49. Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

50. Defendant intentionally invaded Plaintiff's privacy through its barrage of dozens of unwanted pre-recorded and autodialed phone calls to Plaintiff's cellular phone. This conduct, in conjunction with Defendant's calls at different times throughout the day, was highly intrusive and invasive to Plaintiff, and thus, eliminated Plaintiff's right to privacy.

51. Defendant's unsolicited phone harassment campaign severely disrupted Plaintiff's privacy, disrupted his overall focus, and continually frustrated and annoyed Plaintiff to the point where he was denied the ability to quietly live his life, instead having it upended by Defendant's harassing phone call campaign.

52. These persistent collection calls eliminated the peace and solitude that Plaintiff would have otherwise had in his home and/or any other location in which he would have normally brought his cellular phone.

53. By continuing to call Plaintiff in an attempt to dragoon him into payment, in spite of his dire circumstances, Plaintiff had no reasonable escape from these incessant calls and conduct.

WHEREFORE, Plaintiff, MATTHEW JORDAN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Awarding Plaintiff actual damages;

c. Award Plaintiff punitive damages;

d. Award Plaintiff reasonable attorney's fees and costs;

e. Enjoining Defendant from contacting Plaintiff; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT IV-TRESPASS TO CHATTELS

54. Plaintiff restates and realleges paragraphs 1 through 53 as though fully set forth herein.

55. Trespass to Chattels is defined as the intentional interference with the possession, or physical condition of a chattel in the possession of another, without justification. Prosser, Torts, 64 (2d ed.).

56. "The harm recognized by the ancient common law claim of trespass to chattels — the intentional dispossession of chattel, or the use of or interference with a chattel that is in the possession of another, is a close analog for a TCPA violation." *Mey v. Got Warranty, Inc.*, 193 F.Supp.3d 641, 647 (N.D. W. Va. 2016).

57. Courts have applied this tort theory to unwanted telephone calls and text messages. *See Czech v. Wall St. on Demand*, 674 F.Supp.2d 1102, 1122 (D.Minn. 2009) and *Amos Financial, L.L.C. v. H&B&T Corp.*, 48 Misc.3d 1205(A), 2015 WL 3953325, at *8 (N.Y.Sup. Ct. June 29, 2015).

58. "Even if the consumer does not answer the call or hear the ring tone, the mere invasion of the consumer's electronic device can be considered a trespass to chattels, just as "plac[ing a] foot on another's property" is trespass." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1551 (2016) (Thomas, J., concurring).

59. Defendant interfered with Plaintiff's ability to use his cellular phone while in his possession. Defendant knew or should have known that its phone calls were not welcomed, as Plaintiff explicitly informed Defendant that he was unable to make payment and to stop calling.

60. Defendant caused damage to Plaintiff, including, but not limited to, stress, anxiety, and severe emotional distress, as Defendant was aware that Plaintiff did not wish to receive continued calls, but yet, it persisted with its harassing calling campaign in an effort to extract payment.

61. Plaintiff also suffered damages in the form of the wear and tear caused to his cellular telephone, the loss of battery charge, and the loss of battery life.

WHEREFORE, Plaintiff, MATTHEW JORDAN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

    b. Awarding Plaintiff actual damages;

    c. Award Plaintiff punitive damages;

    d. Award Plaintiff reasonable attorney's fees and costs;

    e. Enjoining Defendant from contacting Plaintiff; and

    f. Awarding any other relief as this Honorable Court deems just and appropriate.

DATED this 3rd day of March, 2021.　　　　　　　Respectfully Submitted,

                                                          */s/ Taxiarchis Hatzidimitriadis*
                                                          Taxiarchis Hatzidimitriadis #6319225
                                                          David S. Klain #0066305
                                                          CONSUMER LAW PARTNERS, LLC
                                                          333 N. Michigan Ave., Suite 1300
                                                          Chicago, Illinois 60601
                                                          (267) 422-1000 (phone)
                                                          (267) 422-2000 (fax)
                                                          teddy@consumerlawpartners.com

                                                          *Counsel for Plaintiff, Matthew Jordan*